IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NETTIE WADE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:05-CV-697-WKW |
| | ) | |
| PLANTATION PIPE LINE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs in this case are members of a family living on a tract of land in Thorsby, Alabama. They bring this action against Plantation Pipe Line Company alleging negligence, wantonness, private nuisance, strict liability, and trespass, all stemming from damage to the defendant's fuel pipeline which resulted in a diesel fuel spill on plaintiffs' property. Immediately before the court is the defendant's Motion for Partial Summary Judgment (Doc. # 45) in which the defendant claims that the plaintiffs have failed to offer sufficient evidence that any injuries they have suffered or will suffer were caused by the fuel spill, that the transportation of diesel fuel in this manner is not subject to strict liability, and that some claims are precluded by a release signed by a predecessor in title to the plaintiffs' property in 1960. For the reasons set forth below, the motion is due to be granted in part and denied in part.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On June 4, 2003, a Chilton County Road Department employee operating a road grader on a county road ruptured the defendant's pipeline. (Lisa Wade Dep. 34-36.) Approximately 9,300 gallons of diesel fuel spilled and an undetermined amount of it entered the plaintiffs' property.

(Brose Dep., Ex. 2 at 4-2.)  Family members present on the property were evacuated by first responders.  (Earl Woods Dep. 50:08-10.)  Later that day, representatives of the defendant took family members to their five mobile homes to get essentials, instructing them to move quickly. (Sheila Davis Dep. 75:12-21.)  Sheila Davis became dizzy as she collected her belongings and the dizziness increased the longer she was in her trailer.  (*Id.* 67:11-14.)

After two nights at a hotel, an employee of the defendant informed the plaintiffs that they could return to their property.  (*Id.* 64:03-08.)  Upon their return, all of the plaintiffs claim to have become sick with headaches, irritated eyes, and diarrhea.  (*Id.* 65:17-66:22.)  Specifically, Robert Davis claimed that he experienced headaches, nausea, and diarrhea (Robert Davis Dep. 77:20-78:13.) Sheila Davis claimed that she experienced runny and burning eyes, diarrhea, headaches, and dizziness.  (Sheila Davis Dep. 67:03-15.)  Earl Woods claimed that he experienced headaches, nausea, burning eyes, and trouble breathing. (Earl Woods Dep. 49:11-23, 51:01-22.)  Lisa Wade claimed that she experienced diarrhea, running eyes, and headaches.  (Lisa Wade Dep. 40:03-41:16.) The children claimed that they experienced runny eyes and diarrhea. (*Id.* 42:05-09.)  Jacqueline Woods claimed that she experienced nausea, vomiting, burning eyes, and that she collapsed. (Jacqueline Woods Dep. 101-03, 107:07-108:10.)  She was taken to the emergency room.  (*Id.* 102:08-103:10.)

The plaintiffs employed an expert, James Olsen ("Olsen"), to testify on toxic chemical issues. Olsen does not provide any information about how much diesel fuel entered the plaintiffs' property, or the levels of toxins in their bodies at any time after the spill.  He does state that susceptibility to chemicals varies greatly among people.  (Olsen Report *at* 24.)  He also reports that "[b]reathing diesel vapors can irritate the nose and throat and cause headaches, dizziness, nausea, vomiting, and

2

confusion." (*Id.* at 3.)

The plaintiffs filed their complaint in the Circuit Court of Chilton County, Alabama, in June 2005. (Doc. # 1.) The defendant removed the action to this court in July 2005. *(Id.)* The defendant's Motion for Partial Summary Judgment (Doc. # 45) was followed by the plaintiffs' Response (Doc. # 57) and the defendant's Reply (Doc. # 60).

## II. JURISDICTION AND VENUE

Because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, the court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

3

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

### III.  DISCUSSION

#### A.  Personal Injury

The question before the court is whether the plaintiffs have presented sufficient evidence to prove that at least some of their physical injuries were caused by exposure to diesel fuel transported by the defendant.  Asking for summary judgment on all claims for personal injury, defendant insists that plaintiffs must have medical expert testimony to prove that all of their physical injuries were caused by exposure to diesel.  The defendant relies on *McClain v. Metabolife International, Inc.,* 401 F.3d 1233 (11th Cir. 2005) for this proposition.  *McClain*  involved allegations that a toxic combination of ephedrine and caffeine taken by mouth as a dietary supplement caused strokes and heart attacks.  The *McClain* court stated that "[t]his type of proof requires expert testimony." *Id.* at 1237.

4

This court, however, does not believe the *McClain* decision extends to cases in which a plaintiff has been exposed to a toxic substance in the way these plaintiffs have. *McClain* does not require medical testimony when several individuals simultaneously become ill immediately upon exposure to strong noxious fumes, suffering dizziness, nausea, breathing difficulty, irritated eyes, and diarrhea.

In this case, personal injury is claimed in negligence and wantonness counts under Alabama state law.[1] It has long been the rule in Alabama that "[a] plaintiff can testify to what his injuries are, so long as his testimony is based on facts and does not present medical conclusions or opinions that require expert testimony." *Marcus v. Lindsey*, 592 So. 2d 1045, 1046 (Ala. 1992) (citing *Central of Georgia Ry. v. Clements*, 57 So. 52, 53 (Ala. App. 1911)). "In case of an injury a person not a physician or a medical expert may state the facts, his symptoms, etc.; but he cannot, as a rule, state that such injuries resulted in some particular disease to some organ not *actually* injured." *Id.* at 1047 (quotation marks, brackets, and citation omitted). That causation is embedded in such testimony is a given. *Id*. at 1046. *See* 31A Am Jur 2d Expert and Opinion Evidence § 197 ("A plaintiff in a personal injury action may testify to physical pain suffered from, and *as a result of*, his injuries.") (emphasis added). In *Marcus*, the plaintiff hit his head on the windshield of his automobile in an accident, and the court properly allowed him to testify that after the accident he suffered headaches that he had not suffered before the accident. No medical testimony was required to establish causation. Based on the automobile collision and the injuries from which the plaintiff had not experienced prior to the incident, the court concluded that "the jury could have found from the

---

[1] Rule 601 of the Federal Rules of Evidence provides that the competency of a witness shall be determined by state law when state law provides the rule of decision. *Lott v. C&W Trucking, Inc.*, 15 F. Supp. 2d 1167, 1169 (M.D. Ala. 1997) (Thompson, J.).

evidence that the defendant . . . proximately caus[ed] Lindsey to be personally injured." *Id*.

The plaintiffs may testify that they became ill immediately upon exposure to diesel fumes, which may form the basis of at least a nominal personal injury claim. At some point, the causation between exposure to diesel fuel and a medical condition would be beyond the knowledge of an untrained person to deduce. However, the immediacy of the reaction that these plaintiffs experienced and the fact that they all had similar reactions is sufficient to show causation.[2] This will be an evidentiary matter at trial and is not a proper ground for summary judgment as to all personal injuries[3] because the nature, extent, and causation of personal injury are in dispute.

### B. The Release

In one of its grounds for partial summary judgment, the defendant relies on a release executed in 1960 in favor of it by John C. Wade, the predecessor-in-interest of the plaintiffs. It reads:

> [T]he undersigned hereby release and forever discharge PLANTATION PIPELINE COMPANY its successors, assigns, agents and servants . . . from all claims and demands for damages of every kind and character which the undersigned, (his, her, their, its) successors, assigns, heirs and personal representatives now have or may have in the future against the said company arising out of the removal of

---

[2]  Alabama case law requires expert testimony to prove causation when  "the nature and origin of [injuries or diseases] is obviously beyond the understanding of the average person."  *Ex parte Trinity Indus., Inc.*, 680 So. 2d 262, 269 (Ala. 1996).  This is true in the products liability context, *Goree v. Winnebago Indus., Inc*., 958 F. 2d 1537 (11th Cir. 1992) ("[E]xpert testimony is not required when a jury could reasonably infer from the product's failure 'under all the attendant circumstances' that its defective condition caused the plaintiff's injury."); the medical malpractice context, *Sorrell v. King*, 946 So. 2d 854, 863 (Ala. 2006) ("In most medical malpractice cases, proximate cause must be established by expert testimony. . . . [because] issues of proximate cause in medical malpractice cases are ordinarily 'beyond "the ken of the average layman."); and the worker's compensation context, *Ex parte Price*, 555 So. 2d 1060 (Ala. 1989) ("To establish medical causation the employee must show that the exertion or strain or the exposure to conditions was a contributing cause of the employee's injury.  Whether the claimant has satisfied this test in the absence of medical testimony, or by lay testimony coupled with medical evidence, must be determined on a case-by-case basis." (punctuation and brackets omitted)).

[3]  While there was no specific evidence establishing how much diesel fuel to which the plaintiffs were exposed when they simultaneously became ill, a jury could reasonably find that the facts imply a sufficient amount, estimated to be as much as 9,300 gallons, to cause at least the initial discomfort and sickness.  Sufficient evidence has been offered for a reasonable jury to find cause-in-fact as to some personal injury.

PLANTATION'S four-inch pipe line and the construction of an eight-inch pipeline, including all actions incidental thereto, across lands (or a part of the lands) situated in Chilton County, State of Alabama.

(Doc. # 48-2.)

The release signed by the plaintiffs' predecessor in interest is irrelevant to the plaintiff's current claims. The release bars suits "arising out of the *removal* of a four-inch pipeline and the *construction* of an eight-inch pipeline." The rupturing of the pipeline some 43 years later does not arise out of removal and construction of the pipeline. The cases cited by the defendant are wholly inapposite. *See Eastwood Lands, Inc. v. U.S. Steel Corp.*, 417 So. 2d 164 (Ala. 1982)*; Republic Steel Corp. v. Payne*, 132 So. 2d 581 (Ala. 1961). *Republic Steel* construed the following covenant: "[T]hat neither the Seller nor any of its successors . . . shall at any time become liable to the Purchasers or Purchasers' . . . successors . . . for damages . . . resulting from or in any way connected with the *operation or operations* of Seller." *Republic* Steel, 132 So. 2d at 583 (emphasis added). Similarly, in *Eastwood Lands*, the deed covenant at issue precluded rights of action "*resulting from past or future mining operations*" from being asserted by the grantee or grantee's successors in title. *Eastwood,* 417 So. 2d at 168 n. 1 (emphasis added). No such language regarding the operation of the pipeline appears in the release in this case. Thus, the summary judgment motion is due to be denied on the basis of the purported release.[4]

### C. Strict Liability

The defendant argues that the plaintiffs cannot show it is strictly liable for any injuries to plaintiff related to its transportation of diesel fuel because such transportation is not an abnormally

---

[4] Plaintiffs assert that the spill occurred on adjoining land and the release would therefore be ineffective in any event. Defendant did not respond to this assertion.

dangerous activity.  The plaintiffs did not address the defendant's argument in their response to the defendant's motion for partial summary judgment, and at the pretrial conference they abandoned this claim.  Therefore, the motion for summary judgment is due to be granted with respect to the strict liability claim.

## V.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that:

1.      The defendant's Motion for Partial Summary Judgment (Doc. # 45) is GRANTED as to the strict liability claim;

2.      The plaintiff's strict liability claim as stated in Count 5 of the Complaint is DISMISSED WITH PREJUDICE;

2.      The defendant's Motion for Partial Summary Judgment (Doc. # 45) is DENIED as to all other claims.

DONE this 8th day of June, 2007.

_____/s/   W.  Keith Watkins_____
UNITED STATES DISTRICT JUDGE